**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                              No. 95-5227

TELLY FISHER,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.
                                                                               No. 95-5228

WHEELER WILLIAMS, a/k/a Wheeler
Robinson,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Herbert N. Maletz, Senior Judge, sitting by designation.
(CR-94-308-MJG)

Argued: June 7, 1996

Decided: October 2, 1996

Before HALL and ERVIN, Circuit Judges, and JACKSON, United
States District Judge for the Eastern District of Virginia, sitting by
designation.

_____

Affirmed in part and vacated and remanded in part by unpublished
opinion. Judge Jackson wrote the majority opinion, in which Judge

Ervin joined. Judge Hall wrote a separate opinion concurring in part and dissenting in part.

_____

**COUNSEL**

**ARGUED:** Donald H. Feige, Baltimore, Maryland, for Appellant Fisher; Beth M. Farber, Assistant Federal Public Defender, Greenbelt, Maryland, for Appellant Williams. Jamie M. Bennett, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** James K. Bredar, Federal Public Defender, Greenbelt, Maryland, for Appellant Williams. Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

JACKSON, District Judge:

After the district judge denied Defendants' motion to suppress evidence, Wheeler Williams pled guilty to violating 21 U.S.C. § 922(g) (1994); his co-defendant, Telly Fisher, pled guilty to violating 21 U.S.C. § 841(a)(1) (1994). Williams and Fisher appeal the district court's denial of their motion to suppress, as well as enhancements imposed upon their sentences. We affirm the lower court's denial of the suppression motion and the two-point enhancement imposed upon Fisher; we reverse the four-point enhancement imposed upon Williams.

I.

On May 4, 1994, a confidential informant warned Drug Enforcement Agency special agent David Shields that Defendants would commit murder that night. Agent Shields testified that the informant

2

told him that Fisher, described as having a long face, buck teeth, and beard, and Willard (later identified as "Wheeler") Williams, described as an older man with a mustache and stocky build, would spend the night at 1131 Carroll Street. They would depart at 7:30 a.m. in a 1989 gold Ford Taurus, Maryland tag BCD 097, and travel to Baltimore County to rob and/or kill a "New York boy" who possessed heroin and cocaine. A Baltimore County Police Detective testified that Agent Shields' partner, Agent Tomaszewski, told him that a third person, Biff, would also participate in the conspiracy. Biff was described as a black male in his 20s, five foot nine inches, thin, and wearing a black rain jacket. The police set up surveillance. While the police watched, the informant later met with the suspects and corrected his earlier information, stating that the murder would take place the following day.

At approximately 7:30 on the morning of May 5th, officers observed a gold Taurus with the predicted license plates park in front of 1128 Carroll Street. Only the driver, Fisher, was inside. At approximately 8:30 a.m., another individual, Williams, got in the passenger's seat, and the car headed into the city of Baltimore. [1] Because the police, who followed them, feared they might lose the car in rush-hour traffic, they stopped the car while it was still headed into the city, about ten miles from Baltimore County. At least five police officers were present in three marked vehicles.

The officers approached the car, some with weapons drawn and badges displayed, and told the two men to exit the car. One officer saw the butt of a Colt .45 semiautomatic pistol beneath Williams' seat. The police placed the two men against the car and patted them down. The police found a magazine with live rounds in Williams' clothing and fifty-nine glass vials of cocaine on Fisher's person. Both men were handcuffed and arrested. According to the indictment and presentence report, a loaded pump shotgun was also found in the rear compartment of the car.

The district court denied Defendants' motion to suppress the firearms and drugs, which they argued were the tainted fruit of a search incident to the illegal arrests. The district judge reasoned that the

_____

[1] Baltimore County surrounds Baltimore City in a concentric circle.

3

police officers had sufficiently corroborated specific facts to rely on the informant's tip, which gave them probable cause to make the warrantless arrests. Williams subsequently pled guilty to one count of possession of a firearm by a convicted felon, in violation of 21 U.S.C. § 922(g); Fisher pled guilty to the possession of "crack" cocaine with intent to distribute, in violation of 21 U.S.C.§ 841(a)(1).

The district judge sentenced Williams to 110 months, which lay within the sentencing guidelines range applicable to an offense level of 24 and criminal history category of VI. United States Sentencing Commission, Guidelines Manual, (Nov. 1994) ("USSG"). The district judge calculated the base offense level as 20, pursuant to USSG § 2K2.1(a)(4)(A), which governs the offense of possession of a firearm by a defendant who has one prior conviction for a violent felony. The district judge further increased the base offense level by four points under USSG § 2K2.1(b)(5), which governs the possession of a firearm in connection with a felony offense, and added another two points under USSG § 2K2.1(b)(4), which penalizes defendants for possessing firearms that have obliterated serial numbers. Finally, he decreased the offense level by two points for acceptance of responsibility under USSG § 3E1.1(a).

Fisher had a criminal history category of I. He was sentenced to 41 months, the minimum provided by the guidelines. Fisher's base offense level was 22, to which the district judge added two points for possession of a dangerous weapon under USSG § 2D1.1(b)(1) and subtracted two points for acceptance of responsibility under USSG § 3E1.1(a).

We review de novo the determination of probable cause for warrantless arrest, but we review factual findings in this context for clear error. United States v. Williams, 10 F.3d 1070, 1074 (4th Cir. 1993) (citing United States v. McCraw, 920 F.2d 224 (4th Cir. 1990)), cert. denied, 115 S. Ct. 313 (1994). Similarly, we review legal questions concerning sentencing guidelines de novo but factual conclusions relating to sentencing for clear error. United States v. Blake, 81 F.3d 498, 503 (4th Cir. 1996) (citing United States v. Singh, 54 F.3d 1182, 1190 (4th Cir. 1995)).

II.

A.

The Fourth Amendment forbids police from conducting unreasonable searches and seizures. U.S. CONST. amend. IV. When a police officer makes an unconstitutional warrantless arrest, courts must suppress the evidence obtained from the search incident to that arrest. Elkins v. United States, 364 U.S. 206, 223 (1960). Police officers may arrest a suspect without a warrant, however, if they have probable cause to believe the suspect had committed or was committing a felony. Draper v. United States, 358 U.S. 307, 310-11 (1959). Probable cause exists if "at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).

Defendants argue that the arrests violated the Fourth Amendment because the officers lacked probable cause to believe Defendants were committing a robbery or murder.[2] To support this contention, Defendants cite the unproven reliability of the confidential informant, pointing to his lack of track record, certain incorrect information he provided, and the officers' failure to corroborate some of the information. We find this argument unpersuasive.

To assess probable cause for warrantless arrest on the basis of an informant's tip, courts must look to the totality of the circumstances surrounding the information available to the police officers. United States v. Miller, 925 F.2d 695, 698 (4th Cir.), cert. denied, 502 U.S. 833 (1991) (citing Illinois v. Gates, 462 U.S. 213, 230 (1983)). The degree to which an informant's tip is corroborated is important in evaluating whether the tip establishes probable cause. Id. (citing Draper v. United States, 388 U.S. 307 (1959)). We have expressly

_____

[2] United States argues that Defendants' encounter with the police was merely a brief investigatory stop and not a search, which therefore did not require probable cause. Terry v. Ohio, 392 U.S. 1, 16-19 (1968). We need not reach the issue, however, because we find that the police had probable cause to stop appellants.

held that corroboration can derive from a police officer's observing "a substantial portion" of what the informant predicted. This observation can in turn support a reasonable conclusion that the other information supplied concerning the commission of a felony was correct. Id. at 699. In addition, even if the informant is unknown, other indicia of reliability may suffice to meet the corroboration requirement. In Miller, which dealt with information supplied about drug trafficking activity, we found that the informant's interest in obtaining leniency, in conjunction with the observations by the police officer and his previous arrest of the defendant on drug charges, substantially corroborated the information and established reliability. Id.

Here, the correct information supplied by the informant significantly outweighs the information Defendants characterize as incorrect and uncorroborated. The latter information includes the following: one of the predicted suspects, "Biff", failed to appear; Fisher did not stay overnight at the Carroll Street home, but instead appeared at that location the next morning; the suspects departed over an hour after the predicted time; and the date the informant initially gave concerning the expected offense was incorrect. The informant provided significant detail, however, that proved correct, including the exact location of the house; the color, make, and tag of the car; and descriptions of the two men who departed in the car. In addition, the informant corrected the date of the planned offense after he spoke with the suspects under police surveillance the day before the murder was to take place. This corroboration of significant details provided the officers with probable cause for suspecting criminal activity.

Defendants also challenge the informant's reliability on the basis that he provided merely "innocent" information: that is, he predicted events and provided descriptions easily observed by the general public, such as the suspects' appearances and their car. Defendants argue that such public information merits greater corroboration before giving rise to probable cause for suspecting criminal activity. This assertion is incorrect. In United States of America v. Wilhelm, 80 F.3d 116, 120 (4th Cir. 1996), this court recognized that "corroboration of innocent details of an informant's report tends to indicate that other aspects of the report are also correct." Further, "[i]nnocent behavior frequently will provide the basis for a showing of probable cause . . . ." United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir.), cert.

6

denied, 114 S. Ct. 485 (1993). In Lalor, confirmation of [defendant's] address, vehicle and alias gave credence to the allegations of criminal activity. Id. at 1581. Similar information was provided in the case at bar, which, as outlined above, was sufficiently detailed to give rise to probable cause. The district court's denial of the motion to suppress the evidence was appropriate.

B.

Williams appeals the four-point enhancement imposed pursuant to USSG § 2K2.1(b)(5). A sentencing court should apply this enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." USSG § 2K2.1(b)(5). The application note defines a felony offense as any felony, whether or not a criminal charge was brought or a conviction obtained. USSG § 2K2.1(b)(5), comment. (n.7). In the case at bar, the connected felony offense was the alleged plan to rob or murder the "New York boy," which the informant told police Defendants intended to commit.**3** Williams contests the district court's finding that the government proved by a preponderance of the evidence the necessary connection between Williams' possession of the guns and the underlying felony.

We find that the facts of this case do not support the district judge's conclusion that the Government proved the underlying felony by a preponderance of the evidence. The basis for his holding was the same information that he found had established probable cause for the police to arrest the suspects. Unlike warrantless arrests, which require probable cause, Draper, 358 U.S. at 310-11, enhancements can only be applied if the Government proves the underlying facts by the stricter preponderance of the evidence standard, United States v. Urrego-Linares, 879 F.2d 1234, 1238 (4th Cir.), cert. denied, 493 U.S. 943 (1989).**4** Although we hold that the informant's tip established proba-

_____

**3** At oral argument, the Government conceded it had insufficient evidence to indict Defendants for conspiracy to murder.
**4** Noting the difference in the two standards, the Supreme Court has stated that probable cause is not a finely tuned standard comparable to the standard of proof by a preponderance of the evidence. Ornelas v. United States, 116 S. Ct. 1657, 1661 (1996) (citing Gates, 462 U.S. at 235).

7

ble cause for the warrantless arrest, we find that the same information was insufficient to prove by a preponderance of the evidence the plan to kill or rob the "New York boy." The Government did not produce the informant in court, nor did it present corroborating evidence of the plot. Williams has denied the allegation, and the intended victim was neither identified nor produced. We therefore find that the district judge's enhancement was improper.

C.

Fisher challenges the two-point enhancement imposed pursuant to USSG § 2D1.1(b)(1), which applies if a firearm was possessed during commission of the offense. Fisher, who had fifty-nine vials of cocaine on his person at the time of arrest, pled guilty to possession of crack cocaine with intent to distribute. At the time of arrest, police officers found two firearms in the car: one under Williams' seat and one hidden toward the rear of the car. Commentary accompanying USSG § 2D1.1(b)(1) notes that the enhancement "reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon is connected with the offense." USSG § 2D1.1(b)(1), comment. (n.3). Fisher notes the lack of testimony concerning the ownership and precise location of the gun in the car. He further argues that he obtained the cocaine before the incident and that his possession was unrelated to the guns or harm that he was allegedly going to wreak upon the "New York boy." These arguments are insufficient to overcome sentencing guidelines that justify attribution of the guns to Fisher.

The sentencing guidelines define relevant conduct to include, in the case of a jointly undertaken criminal activity, all reasonably foreseeable acts of others in furtherance of that activity. USSG § 1B1.3(a)(1)(B). The presence of guns to perpetrate illicit drug activity typically is reasonably foreseeable: "Absent evidence of exceptional circumstances, . . . it [is] fairly inferable that a codefendant's possession of a dangerous weapon is foreseeable to a defendant with reason to believe that their collaborative criminal venture includes an exchange of controlled substances for a large amount of cash." United States v. Kimberlin, 18 F.3d 1156, 1160 (4th Cir. 1994), cert. denied, 115 S. Ct. 131 (1994), (citing United States v. Bianco, 922 F.2d 910,

8

912 (1st Cir. 1991)), cert. denied, 115 S. Ct. 131 (1994); accord United States v. Mena-Robles, 4 F.3d 1026, 1036 (1st Cir. 1993) (approving enhancement whenever codefendant's possession of firearm in furtherance of joint criminal activity was reasonably foreseeable to defendant; since guns are common to drug trading, it is fairly inferable that codefendant's possession of gun is foreseeable absent exceptional circumstances), cert. denied, 114 S. Ct. 1550 (1994). Although Fisher was convicted of possession with intent to distribute and not of firearm possession, it is clearly inferable that Fisher could have foreseen Williams' carrying firearms to complete the intended illicit drug transaction. The Court may therefore add two points to Fisher's base offense level for possession of a firearm.

There is a recognized connection between firearm possession and drugs. In light of the common use of guns during the course of drug trafficking, physical proximity of firearms to drugs can weigh significantly in favor of establishing a sufficient connection for enhancement under § 2D1.1(b)(1). E.g. United States v. White, 875 F.2d 427, 433 (4th Cir. 1989) (noting that weapons are now tools of the trade in illegal drug operations), Kimberlin, 18 F.3d at 1159. United States v. Sanders, 990 F.2d 582, 585 (10th Cir.) (finding sufficient the physical proximity of drugs and guns, which were in trunk of car in which defendant was arrested) (citing United States v. Wheelwright, 918 F.2d 226, 227 (1st Cir. 1990)), cert. denied, 114 S.Ct. 216 (1993); United States v. Condren, 18 F.3d 1190, 1197 (5th Cir.), cert. denied, 115 S.Ct. 161 (1994) (rejecting requirement that Government show nexus between firearm and felony drug possession offense other than fact of physical proximity of gun and drugs). In the case at bar, the firearms and drugs, both of which were in the car at the time of the arrest, were sufficiently related for purposes of § 2D1.1(b)(1). The informant met with Fisher and Williams to discuss their joint plans the day before. We find that Fisher could have foreseen that Williams would carry a gun to accomplish the drug distribution that Fisher intended. The district court's finding was not in error and was supported by a preponderance of the evidence.

III.

Accordingly, we affirm the denial of the motion to suppress and the imposition of the two-level enhancement to Fisher's base offense

9

level. We vacate, however, the application of the four-level enhancement to Williams' base offense level and remand the case for resentencing not inconsistent with this opinion.

<u>AFFIRMED IN PART, VACATED IN PART, AND REMANDED</u>

HALL, Circuit Judge, concurring in part and dissenting in part:

I do not agree that the informant's tip, standing alone, contained sufficient material details to provide the police with probable cause to arrest the defendants. <u>See</u> Section II-A, <u>supra</u>. The tip was, however, more than sufficient to give rise to a reasonable and articulable suspicion that criminal activity was afoot, thereby permitting the police to stop the defendants' vehicle and conduct a brief investigation. <u>See ante</u>, at 5 n.2. Of course, once the police discovered the pistol beneath Williams' seat, probable cause to arrest was established. I therefore concur in the majority's conclusion that the defendants' convictions must be affirmed.

Unlike the majority, however, I would affirm the district court's enhancement of Williams' sentence pursuant to USSG Section 2K2.1(b)(5). Were I required to decide the matter in the first instance, I might agree with the majority that the informant's tip and the evidence seized from the vehicle did not establish, by a preponderance of the evidence, the government's contention that Williams would possess the pistol in connection with a subsequent felony offense. The district court's finding to the contrary, though, is one of fact, and I cannot conclude that it was clearly erroneous. I therefore dissent from the majority's holding in Section II-B, <u>supra</u>.

Notwithstanding my disagreement with Sections II-A and B of the majority's opinion, I agree that Fisher was properly sentenced, and thus join the opinion as to Part II-C.

10